Good morning. Your Honors, good morning. My name is Jim Berg. I'm from Yakima. I represent the Appellant Level 3 Communications in this matter. I would like to reserve five minutes if I could. This morning I hope to be able to address a couple of issues on this matter, and they are what I will call the third-party accommodation issue, that is, what is the effect of Section 11B of the Master Right-of-Way Agreement. And the second one is what I call the doubling argument, that is, is there some legal impact in this case related to what the additional responsibilities are upon Level 3 with the assignment that occurred to Sound Transit. First, regarding the third-party accommodation issue, there are basically two prongs as I see it. One prong has to do with whether the 11B, Section 11B of the Master Right-of-Way Agreement, which provides the third-party accommodation, is in some way limited by the decision at the district court that there is an exception to that related to third-party accommodations for the replacement or location of tracks. That's a larger prong, and I will address that second. The first prong I want to address is what is really left of 11B on the third-party accommodation as it relates to the facts of this case, particularly in the summary judgment setting. And in that regard, Judge Layton, who was the district court judge, accepted the fact that 11B of the Master Right-of-Way Agreement is in effect, it provides that third-party accommodations require Sound Transit or BNSF, whatever the case may be, to pay for the relocation costs as opposed to Level 3. And in fact, the court specifically said that if Sound Transit demands relocation to accommodate third parties for another reason, that would be a reason other than the replacement or location of tracks, that Sound Transit, rather than Level 3, must pay for the relocation costs. But then the court went on to say that basically the evidence that was presented by Level 3 on that issue was irrelevant. And of course, in the summary judgment setting, we take issue with that because all the inferences and facts are going to be construed in our favor. And regarding that evidence, I want to briefly go over that. The evidence really starts with the idea that when Sound Transit put together its proposal, as far as... Evidence that they said was irrelevant. Now, was that an email or no? No, that was right in his, you mean the evidence that he said was irrelevant? Yes. Well, no, there was substantial evidence that was presented in the record. But what they said was not admissible, was that the letter that was ghostwritten to Sound Transit? Is that what you're talking about specifically? That is not. And I don't recall that the judge said that it was inadmissible. I think the judge said, and I'm quoting, he said the evidence we presented was irrelevant. But what I'm referring to has nothing to do with that email or that letter that was ghostwritten. So what are you talking about? What I am talking about is that when we're talking about third-party accommodation, that what we have here is a situation where at the outset, what Sound Transit presented was a proposal to completely redo this particular corridor, the D2M Street corridor in Tacoma. And it submitted a draft EIS, Environmental Impact Statement, that was objected to by the fact that it was claimed that WSDOT's Amtrak program that was also going to operate in that same corridor, and for which construction was required, was a larger scope, and that the Sound Transit proposal was disregarding that completely. In response to that, Sound Transit then re-evaluated. They submitted a re-evaluation EIS that, by their own language, became necessary due to changes in the sounder alignment. When we talk about alignment, we're talking about the alignment of the track, as I will explain in a minute, arising out of preliminary design and discussion with WSDOT, the City of Tacoma, and Amtrak. And following that, Sound Transit... with BSNF's own operational improvements as well. It's not just to accommodate WSDOT, is that correct? Well, I mean, there are no specific operational improvements that have been identified related to BNSF's operation, although they retained the right to do that under the Joint Use Agreement. But what I'm talking about is third-party accommodation, which I suggest has to do with and WSDOT, or Sound Transit and WSDOT. I guess the purpose of my question was, WSDOT would benefit, but isn't that irrelevant if this is going to improve BSNF's own operational improvements? The thing is, I don't think that the WSDOT, the scope of their work, which is all commuter-related for Amtrak, etc., has nothing to do with BNSF's operation. And according to this funding and cooperative agreement, which includes a bunch of recitals about what's involved with this cooperation and the funding, these recitals specifically acknowledge that the scope of the WSDOT activity exceeds the scope, and I should say the operational activity, or the anticipated operational activity, exceeds in scope the operational activity of Sound Transit. And so, as a result of that, then their additional funding was obtained and the activity has moved forward, and that those recitals specifically acknowledge that not only does the WSDOT operational requirements exceed the scope, but in fact, they will be constructive. And again, this all goes back to the idea that if, in fact, we're going to give effect, which Judge Leighton said we need to give effect to, the relocation requirements or relocation responsibilities that are brought about to accommodate a third party, I think you have to say that WSDOT is, in fact, a third party. Was they going to move the lines, the tracks anyway? Well, yes, certainly Sound Transit was going to move the tracks, but the discussion in a lot of the materials that were submitted to the district court was that there may very well be a second track, and if you're going to have a second track within the corridor, the movement you make of the first track may be different than what is necessary when you acknowledge that there is to be a second track within the corridor. And again, my position is that at summary judgment, if you're going to expand the scope of the operation because of WSDOT, who is a third party, we have to be given the opportunity to pursue that in discovery and take that to a trier of fact rather than have the judge at the outset say, basically, say that all of that has to do with tracks and replacement or location of track, which is kind of like the outlier that the court came up with as far as non-application of Section 11B of the master agreement. Did that answer your question? Yes, it did. I understand your position. Okay, thank you, thank you, Your Honor. One aside of that funding and cooperation agreement that I think I should mention is that pursuant to Section 3.2, WSDOT is obligated to reimburse Sound Transit for relocation costs due to the construction of WSDOT's additional scope unless the fiber company, in our case Level 3, is obligated by agreement, litigation, or settlement to pay that. The point I make out of that is that under no circumstance recognizing WSDOT as the third party accommodator or the party that's being accommodated, Sound Transit's never going to have to pay for relocation. It's either going to be Level 3 or WSDOT to the extent that those accommodations are being made for WSDOT's improved scope. Now, the reason that I say that there is this evidence out there that needs to be pursued is you look at the depositions and declarations that have been submitted for Sound Transit. There's a declaration from Eric Beckman, who is the rail project director, and he says that many of the conflicts with the existing fiber lines are the result of new drainage systems, new signaling equipment, or vaults, or utilities. Well, that falls outside this category. Well, I guess the fact that you're saying that discovery needs to be pursued, are you conceding the fact that you don't have evidence before the court that WSDOT or however, but I guess that's how you all hear us say it, that you concede that based on what the court had before, the court was right? No, not at all. Well that's what I'm hearing you say. You're saying, well, we need to have more discovery so that we can show that WSDOT was in fact, a third party within the meaning of 11B, right? Yes, correct. Which that implies to me that there was no disputed fact before the court at the time that the court decided this. I disagree because all of the information. I'm just taking your argument. But all of the information that I'm giving you is in the record. But that is all basically from a record that existed in a prior case. You may recall that there was a stipulation that all the parties entered into that we could start out with summary judgment before there was any discovery at all. Let me ask Judge Callahan's question in a little different way because it's the same thing that's bothering me. State for me then, on this issue, as simply as you can, what the controverted issue of fact is that requires trial? The controverted issue of fact is that Judge Layton has basically said that there is no evidence but that all of the additional scope work for WSDOT relates to replacement or location of track. I know, but in your position, is that there is evidence? There is substantial evidence because, at least at the summary judgment stage, that you got this admission and a cooperative agreement, funding agreement, that specifically acknowledges that the WSDOT project is larger in scope than the Sound Transit project and that there are... Counsel, may I interrupt here? This time is fleeting. In your brief, you argue that Sound Transit's intended use of the property as a commuter line triggered this relocation of the utilities, but as I read the agreement, there is nothing that says that the railroad can't change its use of the line and because there was going to be this commuter line, you are saying that they did it because of WSDOT, but they were perfectly permitted. But me and NSF could have done the same thing. I think that's what you're saying, right? Yes, exactly. Okay, but remember where we're going in this argument. This is the third party accommodation argument. BNSF certainly could have gone and done additional work. Sound Transit, forgetting our doubling argument, has that right, but when they then expand what they intended to do, which they admit they're doing, to accommodate WSDOT because WSDOT's scope is larger than Sound Transit, then I submit you have to be able to get to the third party accommodation issue. Why don't you reserve the balance of your time for rebuttal because you only have two minutes left. Thank you. Good morning. Good morning. May it please the court, my name is Matt Siegel from Pacifica Law Group and I am representing the respondent, Sound Transit. I want you to help me out before I lose my train of thought, but would you start by responding to Mr. Berg's, you know, this latest argument about this expansion of use for the third party and why there's an issue of fact on that? I would be happy to respond to that, Judge Tashima, and I think the district court ably responded to it on a number of alternative grounds. The first ground by which the district court addressed that was to say that the question of whether or not some portion of the project benefited the State Department of Transportation was not a material fact on summary judgment. And the reason for that was because of Judge Layton's interpretation of the first part of paragraph 11 of the right-of-way agreement between That's 11A? That's right, Your Honor. Go ahead. And with respect to Judge Layton's construction of 11A, which by the way is in the excerpts of record at page 133, Judge Layton determined that the location or placement of track was a categorical provision that allowed Sound Transit the right to demand relocation at Level 3's expense, even if it would partly benefit a third party. And Judge Layton did not make that up. That was following on a series of decisions interpreting almost identical instruments, BN instruments, in fact, in the District of Oregon, a 2010 comprehensive district court opinion and also a 1998 district court opinion from Judge Aiken, which was sort of the first in a series of decisions. Well, let me ask you. Is this, I mean, this is a matter of contractual interpretation, is that right? That's correct, Your Honor. And real estate instrument interpretation. As a matter of contractual interpretation. Is that a question of law? Yes. In this instance, it was a question of law in terms of interpreting the contract and making the determination how is the contract construed, what do these words mean. So if I were to understand your argument to Judge Tashima, is that you're saying that Judge Layton found that WSDOT wasn't a third party within the meaning of 11B, but that also depends on his interpretation of 11A. So if he was wrong on 11A, might he be wrong on 11B? No, Your Honor. And let me explain why that would be. But didn't you just make that argument? Well, if I did, I apologize. But you did say that when you were asking for Judge Tashima, it was the interpretation under 11B depended on 11A, right? One of the reasons why Judge Layton rejected the application of 11B is because of his construction of 11A. That's the first reason. As a governmental agency, would you concede that there might be an instance where some like WSDOT could be a third party within the meaning of 11B? Or are you saying that WSDOT never could be? Well, whether or not WSDOT was a third party within the meaning of 11B would still be immaterial in the event that the first part of 11A is at play. And that is if we are relocating track or placing track. And that was the import of the two Oregon decisions and the import of the district court's opinion. But importantly, Your Honor, and I want to make sure I'm clear about this, even if you were to take the opposite position and say that WSDOT could be a third party under certain case, there is no disputed issue of fact. Why is that? Well, first of all, the only testimony in the record on this point is that ER 150, and that's from Eric Beckman of Sound Transit, and he stated unequivocally that the relocations of this case are not accommodations to a third party. The funding agreement, which counsel has referred to, does not pertain to these relocations. The funding agreement is for work outside the scope of the D to M Street corridor. Specifically, it's for work between 66th Street and Tacoma and Bridgeport Way, which deals with other telecom providers and not Level 3. Mr. Beckman testified in his deposition there were no partner agencies on this particular project. That's at ER 88. At ER 52, in a letter from Sound Transit, it states improvements are needed for Sound Transit's commuter rail service. Essentially, the argument that counsel is relying on to say there was an issue of fact is entirely speculative based on some selective environmental review documents that do not directly pertain to the relocations at issue, and there's no evidence in the record that says that they do. Now, I think Judge Nelson also hit on an important point here, and that is that when you have a rail project such as this project, and what this commuter rail expansion is, is part of a voter-approved omnibus transit plan that the local voters here in Puget Sound adopted in 1996, and that Sound Transit was tasked with implementing. And so this is a segment of that plan that was approved by the voters. And as part of any of those segments of the plan, you're going to have to go through environmental review. You're going to have to accept comments on a draft environmental impact statement, as Sound Transit did here, to suggest that those exercises, which are to comply with the law, would somehow swallow up the relocation clause. It does not make sense. And finally, on this third-party accommodation issue and the suggestion that there should have been discovery, I'm glad that counsel mentioned the stipulation that's also in the record about going forward with motions for summary judgment, because in that stipulation, it stated that the parties would rely on discovery that had been conducted in a prior analogous case. And it also said that in the event that once motions for summary judgment had been filed, cross-motions as we had here, if any of the parties took issue with whether or not there was an issue of fact that required discovery, they would serve notice at that time. That did not happen. And moreover, there was no 56F, now 56D, motion made at the time that these cross-motions for summary judgment were heard at the district court. So the suggestion now that further discovery would have been required, I think, is not well taken. And certainly, on the record that was before the court, both as a matter of law and simply on the content of the record, Judge Layton correctly dispensed with the third-party accommodation issue, and he should be affirmed on that point. I wanted to talk briefly about another argument that counsel mentioned but did not get into, and that's this concept of doubling. First of all, the district court's opinion addressed the issue of whether there would be any doubling at all by simply saying that the right passed to Sound Transit by operation of real estate law and was not retained by Tacoma, the successor of Burlington Northern's freight rights. And that decision is proper and can be affirmed. I don't think there's any way you could cut that clause that was stricken in half. It would not be a proper exercise of severability principles under Washington state law to do something that would be obviously contrary to the intent of the parties. But I'd also like to point out to the court that really this was not a doubling of obligations at all. What it was was a division, essentially, of the dominant portion of an easement. And there is nothing improper about dividing the dominant portion of an easement, and it for example, in the subdivision context. I would like to refer the court to a case that I think is responsive to these arguments in Level 3's reply brief, that case being Clippinger v. Burge, and the citation is 547 P2D 871. And that case, which is Washington state case, states the proposition that you can, as a general rule, divide the obligations in a dominant portion of the easement. And that doesn't render the easement invalid. So even if we accept the proposition that that was the result of the transaction when Burlington Northern conveyed its rights to sound transit, it's not even necessary to strike a portion of the clause in order to find it enforceable. I would also note that any doubling at this point is entirely hypothetical. In excerpts of Record 75, Level 3 acknowledges through its testimony that it's never been asked by any other party to relocate. The only relocation it's being faced with here is a relocation at the behest of sound transit standing in the shoes of Burlington Northern. Ultimately, Your Honors, this appeal will determine whether Level 3 has to honor the easement agreement that it originally entered into in 1998 with sound transit's predecessor, Burlington Northern, or whether Level 3's obligation to pay for utility relocations under specified circumstances will essentially be converted into a windfall and the relocations then having to be made at public expense. We submit that the district court got this right and should be affirmed and Level 3 should be obligated to make those payments for relocation of utilities. That's all I have unless the court has further questions for me. We don't appear to have additional questions. Thank you for your argument. Thank you, Your Honor. You have like two minutes for rebuttal. Thank you, Your Honor. I would like to just briefly address the doubling issue. Of course, the court easily concluded that, in fact, there was doubling, but the court looked at it within the context that the doubling was focused exclusively on the idea that what previously was a right, a relocation right, that was held by one party now was held by two, and basically said that under that circumstance there is doubling, but went on to analyze that it didn't apply here because it basically says that the NSF couldn't do that, it voided it. What the court did not address was the doubling, I'll call the doubling, but the substantial increase in the relocation burden that is put upon Level 3 by the assignment to an entity like Sound Transit is going to completely change the whole material character of that corridor. But BNS could have done the same thing, right? I mean, Level 3, that didn't change anything. It changed it from the context that BNSF, I suppose, could have but didn't. All right, but that doesn't, but that, what they can do and what they did do. The nature of their operation was entirely freight rail, and it had been for as long as anyone can recall. But there was nothing that prevented them from becoming passenger, correct? Okay, and I suppose you can make that argument except that when you're talking about an assignment of a right, I think you have to go back and look at what the intent of the parties were, and there was certainly no understanding or expectation on the part of Level 3 that at some point they would be obligated to relocate due to a complete change in the operation, not within a freight rail operation, but in a commuter rail operation that was going to take these tracks that, because of the location, were accepted track, you could only go ten miles an hour, and then change the geometry, change the engineering, change the design based on the fact that now those trains are going to move at 50 miles per hour, and there's a whole different criteria. You need to wrap up your time, so I'm... But counsel... Oh, go ahead. Well, I just wanted to ask one quick question. Where does the easement restrict the use of the right-of-way to a freight line? There's nothing in the easement that restricts it, and you're saying BNSF, are you saying it couldn't have? Well, I think... Theoretically, they could, but the practical standpoint is their operation was not as a commuter line. Their operation was as a freight line. That's the way it was throughout the country. I understand your answer now. Thank you. All right. Your time's expired. Thank you, Your Honor. This matter will stand submitted in both parties. Thank you for your argument. The next matter on for argument is John Keita v. City of Seattle, 11-35392.
judges: Nelson, Tashima, Callahan